UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CHAD ST. PIERRE, | ) |  |
|---|---|---|
| Plaintiff | ) |  |
| v. | ) | No. 1:10-cv-104-JAW |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |  |
| Defendant | ) |  |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.[2] I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, Finding 1, Record at 14; that he had severe impairments of recurrent moderate major depressive disorder, generalized anxiety disorder, a personality disorder not otherwise specified, and alcohol and cannabis abuse, Finding 3, *id.*; that, if he stopped substance use, he would have the residual

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff also applied for Supplemental Security Income ("SSI") benefits; however, in a post-hearing letter, he withdrew that application. *See* Record at 11. Thus, this appeal pertains only to his SSD application.

functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and would be able, *inter alia*, to interact with the public occasionally and with coworkers frequently to occasionally, Finding 7, *id.* at 16; that, if he stopped substance use, considering his age (29, defined as a younger individual, on his alleged disability onset date, June 13, 2006), education (a general equivalency diploma), work experience (no transferable job skills), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 9-11, 13, *id.* at 20-21; and that, therefore, if he stopped substance use, he would not have been disabled at any time from his alleged onset date of disability through the date of the decision, October 23, 2009, Finding 14, *id.* at 22. The Decision Review Board failed to review the decision within 90 days, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.450(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings

regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on any of three bases: that the administrative law judge erred by (i) accepting vocational expert testimony that provided incidence numbers for occupational groupings rather than for the specific jobs upon which the administrative law judge relied, (ii) fashioning an RFC that did not reflect the medical opinion evidence, and (iii) improperly relying on vocational evidence testimony that was undercut on cross-examination. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 10) at 3-10. On the strength of the first point, I recommend that the court vacate the decision and remand the case for further proceedings. I briefly discuss the remaining two points, neither of which independently warrants reversal and remand.

### A. Testimony as to Numbers of Jobs

During the plaintiff's hearing, a vocational expert testified that a person with the hypothetical RFC posited by the administrative law judge could perform three representative jobs: those of final assembler, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 713.687-018, with 150 jobs in Maine and 28,601 nationally, cleaner, DOT § 323.687-014, with 1,984 jobs in Maine and 375,130 nationally, and produce weigher, DOT § 299.587-010, with 137 jobs in Maine and 27,647 nationally. *See* Record at 60-62. During cross-examination, the following colloquy ensued:

> Q . . . And with regard to all three of these jobs, ma'am, am I correct that these individual jobs that you've identified – final assembler, cleaner, and produce weigher – are each jobs the numbers for which are contained in a larger group, typically by SOC [Standard Occupational Code] code?
>
> A  Yes.

3

> Q     And is there any –
>
> A     And census code.
>
> Q     Yes, ma'am. And is there any way, looking at either the census code or the SOC code, to break out a number for this particular job?
>
> A     No, there isn't.
>
> Q     Okay. And is that true of the national numbers, as well?
>
> A     Yes, it is.

*Id*. at 65. The administrative law judge relied on the vocational expert's testimony regarding these three representative jobs (final assembler, cleaner, and produce weigher) to reach his Step 5 finding of non-disability. *See id*. at 22.

As the plaintiff notes, *see* Statement of Errors at 5, this court found similar occupational incidence testimony inadequate in *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010). In *Clark*, as here, the vocational expert on whose testimony the administrative law judge relied acknowledged, on cross-examination, that he had provided job numbers for occupational groupings, not for the individual representative jobs. *See Clark*, 2010 WL 2924237, at *2. The court observed:

> At oral argument, counsel for the commissioner contended that (i) no published authority sets forth numbers of specific DOT code-identified jobs existing in the national economy and (ii) that is precisely why the commissioner obtains the testimony of vocational experts, who rely not just on published raw numbers but also on their experience and expertise.
>
> However, the vocational expert in this case essentially admitted that he did in fact rely on published raw numbers, which pertained not to the specific DOT code-identified jobs at issue but rather to *groups of jobs* of differing skill and exertional levels that happened to contain the three specific jobs. His testimony accordingly cannot constitute substantial evidence that the three specific jobs at issue existed in significant numbers in the national economy.

4

*Id.* at *3 (citation omitted) (emphasis added). The same is true in this case. While, in *Clark*, the court held the error harmless, noting that even in the absence of vocational expert testimony, the so-called "Grid," found at Appendix 2 to Subpart P, 20 C.F.R. § 404, would direct the same result (non-disability), *see id.* at *3-*5, no one suggests that this case, which entails nonexertional mental impairments rather than physical impairments, lends itself to disposition by application of the Grid alone, *see, e.g., id.* at *4 ("Sole reliance on the Grid is permissible to the extent that a claimant can perform substantially the full range of work in a given exertional category (for example, sedentary work), and any nonexertional impairments have only a negligible effect on the claimant's ability to perform the full range of that work.").

Reversal and remand are warranted on the basis of the commissioner's failure to meet his Step 5 burden to demonstrate that the plaintiff retained the capacity to perform work *existing in significant numbers* in the national economy.[3]

### B. Fashioning of Mental RFC

The plaintiff next complains that the administrative law judge erred in deeming him capable of interacting occasionally with the public, a finding assertedly unsupported by any expert opinion of record. *See* Statement of Errors at 6-8; Finding 7, Record at 16. He analogizes his case to *Dubriel v. Astrue*, Civil No. 08-406-B-W, 2009 WL 1938986 (D. Me. July 6, 2009)

---

[3] At oral argument, counsel for the commissioner suggested that this case is more like *Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010), than like *Clark*. In *Decker*, a claimant argued that a vocational expert had arbitrarily allocated 10 percent of the job numbers under an SOC code to the individual occupations that he testified the claimant could perform, warranting reversal and remand pursuant to *Clark*. *See Decker*, 2010 WL 4412142, at *2. This court distinguished *Clark* on the ground that the vocational expert in *Decker* relied not solely on the SOC code but also on his 30 years of experience and on market surveys, going so far as to testify that his numbers were "the best . . . from using the resources I have available . . . . It's . . . what I believe is a fair and accurate number." *Id.* at *3 (citation and internal quotation marks omitted). Counsel for the commissioner argued that, in this case, as well, the vocational expert relied in part on personal experience, testifying concerning how the jobs of final assembler and produce weigher are actually performed in Maine. *See* Record at 64, 66. Nonetheless, as the plaintiff's counsel noted in rebuttal, that testimony concerned the nature of the jobs, not the numbers in which they exist. *See id.* Insofar as appears from the record, this is a case in which, as in *Clark*, the vocational expert simply relayed numbers keyed to SOC and census codes without attempting to specify the percentage attributable to the specific DOT-coded jobs in question.

5

(rec. dec., *aff'd* July 24, 2009), in which this court deemed a finding that the claimant was capable of "occasional, incidental" contact with the public unsupported by substantial evidence. *See* Statement of Errors at 7-8. In *Dubriel*, two Disability Determination Services ("DDS") nonexamining experts had completed mental RFC opinions. *See Dubriel*, 2009 WL 1938986, at *2. One expert, whose opinion the administrative law judge stated that he gave "considerable weight," had concluded that the claimant could have "no work with the public[.]" *Id.* at *2-*3 (citations and internal quotation marks omitted). The second expert had stated that the claimant was "not suitable for work with the public or in public and/or crowded areas[.]" *Id.* at *2 (citation and internal quotation marks omitted). The court rejected the commissioner's argument that the administrative law judge's finding comported with those of the DDS experts. *See id.* at *3.

As the plaintiff notes, *see* Statement of Errors at 6-7, the record contains three expert assessments of his mental functioning, *see* Record at 298-303 (report of psychological evaluation by examining DDS consultant David W. Booth, Ph.D.), 320 (mental RFC assessment by nonexamining DDS consultant Peter G. Allen, Ph.D.), 342 (mental RFC assessment by nonexamining DDS consultant Scott W. Hoch, Ph.D.).

Dr. Booth stated that it was likely that the plaintiff "would have difficulty responding in an appropriate way to other people in a work setting." *Id.* at 303. With the benefit of the Booth report, Dr. Allen stated: "Can interact appropriately with small groups of coworkers & tolerate normal supervision; best if no work with the public[,]" *id.* at 320, and Dr. Hoch stated: "Can interact appropriately [with] others in small group & 1 to 1 settings; working [with] large groups could be stressful[,]" *id.* at 342.

The administrative law judge stated that he gave "[s]ome weight" to the Booth opinion, which he found "generally consistent with the evidence as a whole[,]" and "great weight" to, *inter alia*, the Allen and Hoch opinions, which he found "well supported and consistent with the record as a whole." *Id*. at 20.

During the plaintiff's hearing, in response to questions from his counsel, the vocational expert testified that if the plaintiff were limited to interacting with the public occasionally to never, that would not change her answer with respect to the three jobs at issue. *See id*. at 62. She did testify that precluding the plaintiff from public interaction altogether would reduce by two-thirds the number of cleaner jobs he could perform. *See id*. at 62-63, 66-67.

At oral argument, counsel for the commissioner contended that the administrative law judge's finding that the plaintiff was capable of "occasional" interaction with the public comported with the ambiguous findings of Drs. Allen and Hoch. He distinguished the *Dubriel* case on the ground that, in that case, the DDS experts unequivocally stated that the claimant could not work with the public. He argued alternatively that, even if the plaintiff should have been precluded from public interaction altogether, any error in failing to so find was harmless, given the vocational expert's testimony that, even with that limitation, the plaintiff would have remained capable of performing one-third of the cleaner jobs, or approximately 100,000 nationally, a significant number of jobs in the national economy.

The commissioner makes a persuasive argument that the limitation to occasional interaction with the public comports with the findings of Drs. Allen and Hoch. Dr. Hoch imposed no limitation on interaction with the public; rather, he stated that the plaintiff could work one-on-one and with small groups. Occasional interaction implies interaction with relatively small numbers of persons. While Dr. Allen stated that it would be "best" if the

7

plaintiff had no work with the public, he did not preclude such work. As counsel for the commissioner suggested, there is no clear clash between the DDS findings and those of the administrative law judge, as there was in *Dubriel*.

In any event, as counsel for the commissioner alternatively argued, any error would have been harmless had the vocational expert's testimony as to the numbers of jobs in the national economy survived the separate *Clark* challenge, discussed above.[4]

### C. Reliance on Undercut Vocational Expert Testimony

The plaintiff finally argues that the administrative law judge erred in failing to factor in the vocational expert's testimony on cross-examination that his bodily movements, shaking of the arms and legs, which were apparent at hearing, would impact his capacity to perform at least two of the three identified jobs, those of assembler and produce weigher. *See* Statement of Errors at 8-10; Record at 63.

As counsel for the commissioner noted at oral argument, the administrative law judge permissibly ignored this vocational expert testimony because it was irrelevant. The plaintiff does not challenge the omission of a finding, at Step 2, that he suffered from a medically determinable impairment capable of causing such shaking or bodily movements or the omission at Step 4 of resultant functional limitations, if any, from his RFC. *See generally* Statement of Errors. Indeed, at oral argument, his counsel acknowledged that, although the plaintiff testified at hearing that he thought the shaking stemmed from a combination of ADHD [attention deficit

---

[4] In his statement of errors, the plaintiff suggested that, pursuant to *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the survival of one or two of the three jobs at issue or, for that matter, partial numbers of one job, would not save the decision from remand because (i) a reviewing court must judge the propriety of agency action solely on grounds invoked by the agency, and (ii) the court would have to engage in impermissible fact-finding to judge that any jobs other than the combined three on which the administrative law judge relied existed in significant numbers in the national economy. *See* Statement of Errors at 9-10. However, at oral argument, the plaintiff's counsel did not press this point, presumably in recognition of recent caselaw in which this court has rejected that argument. *See Decker*, 2010 WL 4412142, at *4; *Robinson v. Astrue*, Civil No. 09-629-B-W, 2010 WL 4365755, at *4 (D. Me. Oct. 27, 2010) (rec. dec., *aff'd* Dec. 3, 2010).

hyperactivity disorder] and anxiety, *see* Record at 54, there is no medical evidence of record that this was in fact the etiology of that condition.

In any event, even assuming *arguendo* that the administrative law judge erred in failing to take into account the effect of the plaintiff's limb shaking on his ability to perform the jobs of assembler and produce weigher, there was no testimony that this condition would affect his performance of the job of cleaner. Had the vocational expert provided supportable testimony as to the numbers of cleaner jobs (1,984 such jobs in Maine and 375,130 nationally), any error with respect to assessment of the effects of the plaintiff's limb shaking would have been harmless.[5]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of December, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[5] As noted above, the plaintiff's counsel did not press, at oral argument, the point made in his statement of errors that, pursuant to *Chenery*, the survival of the cleaner job did not save the decision from remand. *See* Statement of Errors at 9-10.